UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-md-02246-KAM

IN RE: AIR CRASH NEAR RIO GRANDE
PUERTO RICO ON DECEMBER 3, 2008

THIS DOCUMENT RELATES TO:
11-cv-80059
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiffs Alexander Kent Clapp and Jason Clapp's Motion for Partial Summary Judgment (DE 19 in case no. 11-md-02246). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from exhibits and the Court record, and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:[1]

The instant action arises from an airplane crash that occurred near Rio Grande, Puerto Rico on December 3, 2008. The aircraft, which was operated by Websta's Aviation Services, Inc. ("Websta's") and Ramo, LLC ("Ramo"), among others, crashed into a mountain, killing all aboard. (First Am. Compl. ¶ 18; DE 45-1.) Among those killed were Plaintiffs' decedent, Kent W. Clapp, and his traveling companion, Tracy Turner. (Id. at ¶ 19.)

In the instant action, Plaintiffs bring claims for wrongful death and survivor damages against Websta's and Ramo, among others. (Id. at ¶¶ 29-46.) Plaintiffs also bring claims for

---

[1] Defendant's statement of facts consists almost entirely of contesting the Findings of Fact entered by this Court in Turner v. Ramo, LLC, case number 9:09-cv-81609-KAM and legal arguments. (DE 52  ¶¶ 12, 14-16.)

fraudulent transfer.  (Id. at ¶¶ 47-57.)  In connection with the fraudulent transfer claim, Plaintiffs allege that on December 19, 2008, two weeks after the fatal accident and while on notice of potential claims arising from it, Websta's transferred ownership of five aircraft to Ramo; that the aircraft were assets of Websta's within the meaning of Florida Statutes § 726.102(2); that Ramo was an affiliate of Websta's within the meaning of Florida Statutes § 726.102(1)(d) in that Ramo controlled substantially all of Websta's assets; that as an affiliate of Websta's, Ramo was also an insider pursuant to Florida Statutes § 726.102(7)(d); that Websta's did not receive reasonably equivalent value from Ramo for the transfer of assets; and that Ramo now holds the only assets formerly owned by Websta's that Plaintiffs may draw upon for payment when their wrongful death and survivor claims against Websta's are liquidated. (Id. at ¶¶ 20-28.)  Based on these allegations, Plaintiffs allege that the transfer of assets from Websta's to Ramo was fraudulent per se under Florida Statutes § 726.106(1) and fraudulent by implication under Florida Statutes § 726.105(1)(a), and seek all damages and relief recoverable for said conduct. (Id. at ¶¶ 47-57.)

On October 30, 2009, the estate of Tracy Turner commenced the action styled Turner v. Ramo, LLC, case number 9:09-cv-81609-KAM (the "Turner Action") in the United States District Court for the Southern District of Florida. (Case no. 9:09-cv-81609-KAM, DE 1.)  In the Turner action, the Turner Estate alleged that on December 3, 2008, its decedent, Tracy Turner, was a passenger on a chartered aircraft operated by Websta's when the aircraft slammed into a mountain while en route to San Juan, Puerto Rico, killing all aboard, and that as a result Websta is liable to the estate for damages. (Complaint for Fraudulent Transfer and Request for Preliminary Injunction, Turner Action, hereinafter, "Turner Compl." ¶¶ 11-20.)

The Turner Estate alleged that on December 19, 2008, two weeks after the fatal

accident, and while on notice of potential claims arising from it, Websta's transferred ownership of five aircraft to Ramo; that the aircraft were assets of Websta's within the meaning of Florida Statutes § 726.102(2); that Ramo was an affiliate of Websta's within the meaning of Florida Statutes § 726.102(1)(d) in that Ramo controlled substantially all of Websta's assets; that as an affilate of Websta's, Ramo was also an insider pursuant to Florida Statutes § 726.102(7)(d); that Websta's did not receive reasonably equivalent value from Ramo for the transfer of assets; and that Ramo now holds the only assets formerly owned by Websta's that plaintiffs may draw upon for payment when their wrongful death and survivor claims against Websta's are liquidated. (Turner Compl. ¶¶ 25-33.)  On August 4, 2011, the Court entered its Findings of Fact and Conclusions of Law.[2] (DE 140, case number 9:09-cv-81609-KAM.)

      Plaintiffs now move for summary judgment on the basis of collateral estoppel. Specifically, Plaintiffs contend the issues in the Turner action, based on the Florida's Uniform Fraudulent Transfer Act ("FUFTA"), are "identical to those presented in the Clapps' FUFTA claims," "have been fully litigated and no legitimate interest would be served for expending judicial resources on a second trial of these claims."  For that reason, Plaintiffs seek partial summary judgment, on the basis of collateral estoppel, precluding Ramo from relitigating any issue that was a critical and necessary part of the Court's judgment in the Turner FUFTA. (DE 21 at 2-3.)   In response, Defendants state that it is "indisputable" that the Clapps knew of and collaborated on the Turner FUFTA action and therefore should have joined in the Turner action against Ramo. On that basis, Defendants claim that the application of collateral estoppel would

---

[2] The Court presumes familiarity with this Order.

be "substantially unfair" to Ramo. (DE 51 at 5.)

### II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct

discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III.  Discussion

The term "issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.' " Taylor v. Sturgell, 553 U.S. 880, 892 n.5 (2008). Issue preclusion "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). In the Eleventh Circuit, issue preclusion operates when:

> (1) the issue at stake is identical to the one involved in the prior litigation;
> (2) the issue must have been actually litigated in the prior suit;
> (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and
> (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1317 (11th Cir.2003).[3]  Issue preclusion is used "offensive[ly]" when "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated

---

[3] "[F]ederal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." CSX Transportation, 327 F.3d at 1316.

unsuccessfully in an action with another party." Parklane Hosiery, 439 U.S. at 326 n.4.

Here, Plaintiffs seek an order precluding Ramo from litigating the same issues essential to judgment in Turner v. Ramo, LLC, case number 9:09-cv-81609-KAM.  Based on Plaintiffs' First Amended Complaint in the instant case, the issues at stake in the FUFTA claims are identical to the FUFTA claims in the Turner action. In addition, the FUFTA issues were actually litigated in the prior suit as evidence by the Court's Findings of Fact and Conclusions of Law.  Each of those issues was a critical and necessary part of the final judgment against Ramo.  Lastly, Ramo had a full and fair opportunity to litigate in the Turner FUFTA action by way of a bench trial.

Nonetheless, Ramo opposes a finding of issue preclusion.  In so arguing, Ramo contends that Plaintiffs seek to apply issue preclusion on their wrongful death claims (DE 51 at 7, 14) and on their claims against Mosler (DE 51 at 12).  The Court does not read Plaintiffs' motion as seeking such a broad ruling. Instead, Plaintiffs seek a ruling against Ramo with respect to all the issues essential to the judgment against Ramo in Turner v. Ramo, LLC, case number 9:09-cv-81609-KAM (DE 59 at 2).  In any event, this ruling only prevents Ramo from re-litigating the issues in Turner v. Ramo, LLC, case number 9:09-cv-81609-KAM and nothing more.

Ramo also contends that the use of offensive issue preclusion is "inappropriate due to the equitable factors weighing against it." (DE 51 at 17.)  Specifically, Ramo suggests that Clapp "intentionally sat on the sidelines" and now seeks a "second bite at the apple."  (DE 51 at 18.) The Court disagrees. If anything, it is Ramo who is seeking a "second bite at the apple" by requiring the Plaintiffs in the instant action to present the same evidence already presented to this Court.  Such an approach wastes both the parties and the Court's resources. Therefore, the Court exercises its discretion and finds the use of offensive issue preclusion appropriate here. See

<u>Parklane Hosiery</u>, 439 U.S. at 331 (courts have broad discretion in determining when offensive collateral estoppel should be applied).

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment (DE 19 in case no. 11-md-02246) is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 13th day of January, 2012.

_____
KENNETH A. MARRA
United States District Judge